IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**JOSE DANIEL LAZOS,**

    **Plaintiff,**

    v.                                                                 **CASE NO. 24-3016-JWL**

**HARVEY COUNTY BOARD
OF COMMISSIONERS, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Harvey County Detention Center ("HCDC") in Newton, Kansas. The Court provisionally grants Plaintiff leave to proceed in forma pauperis. The Court finds that the proper processing of Plaintiff's Complaint cannot be achieved without additional information from appropriate officials. Plaintiff's Motion to Supplement Complaint (Doc. 6) is granted, and his Motion to Appoint Counsel (Doc. 4) is denied without prejudice, as discussed below.

## I. Nature of the Matter before the Court

The Complaint includes a variety of allegations about Plaintiff's treatment at the HCDC. First, Plaintiff alleges that he did not receive medical treatment for a head injury. Plaintiff states that he was assaulted by another inmate on March 19, 2023, and sustained a severe head injury causing loss of consciousness, blurred vision, and significant blood loss. (Doc. 1, at 7.) After he regained consciousness, Plaintiff used the intercom to contact staff and request medical assistance. After two hours, officers arrived without medical personnel. Before entering the unit, all inmates

1

were ordered to lockdown. Plaintiff did not lockdown, believing the officers were there to assist him. The officers, Garver, Church, Harbin, and Dutes, entered with tasers drawn and ordered Plaintiff to lie face down on the floor. They told Plaintiff he had disobeyed a direct order and was being placed on lockdown pending a disciplinary hearing. Plaintiff refused to climb the stairs to his cell and demanded medical attention. His demand was denied, but the officers agreed to give him a stair restriction and a bottom bunk assignment.

The next day, Plaintiff was taken to the medical clinic for an appointment he had requested before the incident. Nurse Clarissa refused to examine or treat Plaintiff's head injury. She asked officers to remove Plaintiff from the clinic, which they did.

Second, Plaintiff claims he was retaliated against by being placed in a holding cell from March 20-24, 2023. He had asked to file a temporary restraining order against Officers Garver, Church, Harbin, and Dutes. He was not allowed to use the kiosk during this time to file a grievance. On March 24, he was transferred to the custody of the Kansas Department of Corrections.

Third, Plaintiff states that after he returned to the HCDC in September, officers conducted a shakedown search of the work release pod where Plaintiff was housed. He alleges that Officer Cummings pat-searched him, making contact with his testicles with excessive force and causing severe pain. *Id*. at 13. Also, the officers searching Plaintiff's cell put all of his belongings on the floor.

Fourth, Plaintiff asserts another claim of excessive force. On October 22, 2023, Officer Harbin confronted Plaintiff while outside the gym about allegedly threatening other inmates. Plaintiff denied the allegations, and Harbin responded that he did not believe Plaintiff and was going to move him. Harbin asked if Plaintiff had any belongings in the gym, and Plaintiff responded, "Yes, the rule book says that we can't leave the pod without wearing t-shirts and our

jumpsuit." Harbin then said, "That's it. I'm sick of your smart ass." He allegedly grabbed Plaintiff by the neck, choking and turning him around, and slamming him face-first to the ground. This resulted in a goose egg-sized swelling on his forehead and "extreme pain through his entire body." *Id*. at 16. Harbin began cuffing Plaintiff. Deputies Billenger and Dutes arrived to assist and applied "excessive force" to Plaintiff's spine, neck, arms, and legs. Plaintiff asserts that he was compliant and calm throughout the incident.

Plaintiff alleges that all of the named defendants engaged in a conspiracy by knowingly depriving him of medical treatment and access to the grievance system. *Id*. at 20. He further asserts a claim of racial discrimination because he is Hispanic and all of the defendants are Caucasian. *Id*. at 23. He cites the aforementioned incidents, as well as the failure of Under Sheriff Chapman or Sheriff Gay to respond to any of his grievance appeals. *Id.* at 30.

Last, Plaintiff complains that he has been denied dental care at the HCDC. He states that he filed a medical request in September, 2023, for treatment of two molars that had lost fillings. He was experiencing severe sensitivity to cold water and crunchy foods. Plaintiff alleges that his request was denied. *Id*. at 33. According to Plaintiff, Nurses Amber and Clarissa told him that dental treatment would not be provided while he was at the HCDC. *Id*.

Plaintiff asserts that he again requested dental care for a toothache on January 20, 2024. He was seen by Nurse Clarissa on January 22, and was prescribed 600 mg of Tylenol. She again cited the facility's policy of refusing to provide dental care. *Id*. Plaintiff filed another medical request later that day when he continued to suffer pain from the tooth. On January 23, Plaintiff received a reply that he should get Ibuprofen from the commissary and alternate with the Tylenol. Plaintiff responded asking to have the tooth repaired or extracted. The response was, "You will need to schedule a dental visit when you get released." *Id*. at 34. Plaintiff states that his release

date is not until March 7, 2024. (Doc. 6, at 9.) In supplemental materials (Doc. 6), Plaintiff alleges that he continues to be in severe pain, and the HCDC continues to deny him dental treatment or adequate pain relief.

Plaintiff asserts the following claims: Medical Negligence; Civil Conspiracy; Retaliation; Excessive Force; Racial Discrimination; Neglect of Duty; Bystander Liability; Failure to Supervise; Deliberate Indifference; Due Process; Intentional Infliction of Emotional Distress; and Equal Protection. (Doc. 1, at 6.) Plaintiff seeks declaratory relief; injunctive relief; a temporary restraining order preventing Defendants from causing any more harm or injury; and compensatory and punitive damages. *Id.* at 41-43.

Plaintiff names as defendants the Harvey County Board of Commissioners and Sheriff Chad Gay. *Id.* at 1-2.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings

4

drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the

complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. Additional Information Needed

The Court finds that the proper processing of Plaintiff's Complaint cannot be achieved without additional information from appropriate HCDC officials.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  Accordingly, the Court orders the appropriate HCDC officials to prepare and file a *Martinez* Report.  Once the Report has been received, the Court can properly screen Plaintiff's Complaint under 28 U.S.C. § 1915A.

In addition, the Court is particularly concerned about Plaintiff's claim regarding the HCDC's refusal to provide dental treatment or adequate relief for his dental pain.  It will therefore grant the Defendants an opportunity to respond to Plaintiff's request for injunctive relief as to the affected tooth.  Defendants shall respond in writing by February 22, 2024.

## IV. Motion for Appointment of Counsel

Plaintiff filed a motion for appointment of counsel (Doc. 4).  He sets forth his unsuccessful attempts to obtain counsel.

The Court has considered Plaintiff's motion.  There is no constitutional right to

appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments. The Court denies the motion without prejudice to refiling the motion if Plaintiff's Complaint survives screening.

**IT IS THEREFORE ORDERED BY THE COURT** that**:**

(1) The HCDC officials shall submit the *Martinez* Report by **March 16, 2024**. Upon the filing of that Report, the Court will screen Plaintiff's Complaint. If the Complaint survives screening, the Court will enter a separate order for service.

(2) Officials responsible for the operation of the HCDC are directed to undertake a review of the subject matter of the Complaint:

      a.      To ascertain the facts and circumstances;

      b.      To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

      c.      To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(3) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. If the HCDC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The HCDC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(4) Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(5) Authorization is granted to the officials of the HCDC to interview all witnesses having knowledge of the facts, including Plaintiff.

(6) No motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(7) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Complaint. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED THAT** the defendants shall have until **February 22, 2024**, in which to respond in writing to Plaintiff's request for injunctive relief as to his dental condition.

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion for Leave to Proceed in forma pauperis (Doc. 2) is provisionally **granted** pending receipt of the required financial information.

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion to Supplement Complaint (Doc. 6) is **granted**.

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion to Appoint Counsel (Doc. 4) is **denied** without prejudice.

Copies of this order shall be transmitted to Plaintiff, to the Harvey County Sheriff, and to the Harvey County Attorney.

**IT IS SO ORDERED**.

**Dated February 16, 2024, in Kansas City, Kansas.**

> S/ John W. Lungstrum
> JOHN W. LUNGSTRUM
> UNITED STATES DISTRICT JUDGE