IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**JOSE DANIEL LAZOS,**

      **Plaintiff,**

      v.                                  CASE NO. 24-3016-JWL

**HARVEY COUNTY BOARD
OF COMMISSIONERS, et al.,**

      **Defendants.**

**MEMORANDUM AND ORDER
TO SHOW CAUSE**

Plaintiff brings this pro se action under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed in forma pauperis. Plaintiff was incarcerated at the Harvey County Detention Center ("HCDC") in Newton, Kansas, at the time of filing. On February 16, 2024, the Court entered a Memorandum and Order (Doc. 7) ("M&O ") directing the officials responsible for the operation of HCDC to prepare a *Martinez* Report. The M&O provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 7, at 6.) The *Martinez* Report (Docs. 19-22) has now been filed. Plaintiff has also filed a Response (Doc. 31) to the Report. The Court will screen the Complaint in light of the Report and Response. The Court's screening standards are set forth in the M&O.

**I. Nature of the Matter before the Court**

The Complaint includes a variety of allegations about Plaintiff's treatment at the HCDC. First, Plaintiff alleges that he did not receive medical treatment for a head injury. Plaintiff states that he was assaulted by another inmate on March 19, 2023, and sustained a severe head injury causing loss of consciousness, blurred vision, and significant blood loss. (Doc. 1, at 7.) After he

1

regained consciousness, Plaintiff used the intercom to contact staff and request medical assistance. After two hours, officers arrived without medical personnel. Before entering the unit, all inmates were ordered to lockdown. Plaintiff did not lockdown, believing the officers were there to assist him. The officers, Garver, Church, Harbin, and Dutes, entered with tasers drawn and ordered Plaintiff to lie face down on the floor. They told Plaintiff that he had disobeyed a direct order and was being placed on lockdown pending a disciplinary hearing. Plaintiff refused to climb the stairs to his cell and demanded medical attention. His demand was denied, but the officers agreed to give him a stair restriction and a bottom bunk assignment.

The next day, Plaintiff was taken to the medical clinic for an appointment he had requested before the incident. Plaintiff alleges that Nurse Clarissa refused to examine or treat Plaintiff's head injury. She asked officers to remove Plaintiff from the clinic, which they did.

Second, Plaintiff claims he was retaliated against by being placed in a holding cell from March 20-24, 2023. He had asked to file a temporary restraining order against Officers Garver, Church, Harbin, and Dutes. He was not allowed to use the kiosk during this time to file a grievance. On March 24, he was transferred to the custody of the Kansas Department of Corrections.

Third, Plaintiff states that after he returned to the HCDC in September, 2023, officers conducted a shakedown search of the work release pod where Plaintiff was housed. He alleges that Officer Cummings pat-searched him, making contact with his testicles with excessive force and causing severe pain. *Id*. at 13. Also, the officers searching Plaintiff's cell put all of his belongings on the floor.

Fourth, Plaintiff asserts another claim of excessive force. On October 22, 2023, Officer Harbin confronted Plaintiff while outside the gym about allegedly threatening other inmates. Plaintiff denied the allegations, and Harbin responded that he did not believe Plaintiff and was

going to move him.  Harbin asked if Plaintiff had any belongings in the gym, and Plaintiff responded, "Yes, the rule book says that we can't leave the pod without wearing t-shirts and our jumpsuit."  Harbin then said, "That's it.  I'm sick of your smart ass."  He allegedly grabbed Plaintiff by the neck, choking and turning him around, and slamming him face-first to the ground.  This resulted in a goose egg-sized swelling on his forehead and "extreme pain through his entire body." *Id*. at 16.  Harbin began cuffing Plaintiff.  Deputies Billenger and Dutes arrived to assist and applied "excessive force" to Plaintiff's spine, neck, arms, and legs.  Plaintiff asserts that he was compliant and calm throughout the incident.

Plaintiff alleges that all of the HCDC staff engaged in a conspiracy by knowingly depriving him of medical treatment and access to the grievance system.  *Id*. at 20.  He further asserts a claim of racial discrimination because he is Hispanic and all of the HCDC staff members that he mentions in the Complaint are Caucasian.  *Id*. at 23.  He cites the aforementioned incidents, as well as the failure of Under Sheriff Chapman or Sheriff Gay to respond to any of his grievance appeals.  *Id*. at 30.

Last, Plaintiff complains that he has been denied dental care at the HCDC.  He states that he filed a medical request in September, 2023, for treatment of two molars that had lost fillings.  He was experiencing severe sensitivity to cold water and crunchy foods.  Plaintiff alleges that his request was denied.  *Id*. at 33.  According to Plaintiff, Nurses Amber and Clarissa told him that dental treatment would not be provided while he was at the HCDC.  *Id*.

Plaintiff asserts that he again requested dental care for a toothache on January 20, 2024.  He was seen by Nurse Clarissa on January 22, and was prescribed 600 mg of Tylenol.  She again cited the facility's policy of refusing to provide dental care.  *Id.*  Plaintiff filed another medical request later that day when he continued to suffer pain from the tooth.  On January 23, Plaintiff

received a reply that he should get Ibuprofen from the commissary and alternate with the Tylenol. Plaintiff responded asking to have the tooth repaired or extracted. The response was, "You will need to schedule a dental visit when you get released." *Id*. at 34. Plaintiff states that his release date is not until March 7, 2024. (Doc. 6, at 9.) In supplemental materials dated February 5, 2024 (Doc. 6), Plaintiff alleges that he continues to be in severe pain, and the HCDC continues to deny him dental treatment or adequate pain relief.

Plaintiff asserts the following claims: Medical Negligence; Civil Conspiracy; Retaliation; Excessive Force; Racial Discrimination; Neglect of Duty; Bystander Liability; Failure to Supervise; Deliberate Indifference; Due Process; Intentional Infliction of Emotional Distress; and Equal Protection. (Doc. 1, at 6.) Plaintiff seeks declaratory relief; injunctive relief; a temporary restraining order preventing Defendants from causing any more harm or injury; and compensatory and punitive damages. *Id*. at 41-43.

Plaintiff names as defendants the Harvey County Board of Commissioners and Sheriff Chad Gay. *Id*. at 1-2.

## II. The *Martinez* Report

The Report (Doc. 19) states that Plaintiff was detained at the HCDC from March 6, 2023 to March 24, 2023 and again from September 7, 2023 to March 8, 2024. (Doc. 19, at 1.) During his time there, he submitted dozens of requests and grievances. *Id*. at 1-2.

According to the Report, there is no record of any request to staff related to an incident on March 19, 2023. *Id*. at 4. The inmate who allegedly assaulted Plaintiff, Antonio Knight, denies that any assault occurred, and no witnesses have been found. *Id*. at 8. Further, it appears Plaintiff had the sequence of events wrong in his Complaint. Plaintiff had a routine medical intake visit with LPN Clarissa on March 20, 2023. *Id*. at 4. Plaintiff was confrontational, and at the end of

the visit, Plaintiff said, "I have a head injury aren't you going to address it?" *Id*. Nurse Clarissa instructed him to place a sick call request, and he became hostile. As a result, Nurse Clarissa requested that staff remove him from the clinic. After he was removed and had settled down, Nurse Clarissa examined his scalp, noting a superficial abrasion and some dried blood. *Id*. at 4-5. Lt. Garver also observed the injury, which he describes as a scratch. *Id*. at 5. Nurse Clarissa further noted that Plaintiff's speech was clear and that there was no indication of neurological problems. *Id*.

Then, approximately five hours later, Plaintiff sent a message through the grievance system saying that he was denied medical care by Nurse Clarissa for a concussion, hematoma, hemorrhaging, injured left shoulder, injured left femur, injured left knee, injured left fibula, and injured left ankle. *Id.* He also made multiple aggravated intercom calls demanding medical treatment. His disruptive behavior ultimately caused staff to call a lockdown on his pod. Plaintiff refused to lockdown, and he was removed by staff to a solitary holding cell in accordance with HCDC procedure and the Inmate Rule Book. However, the staff members do not recall drawing their tasers. *Id*. at 6.

Plaintiff was held in disciplinary segregation until his transfer to Lansing Correctional Facility on March 24, 2023. He had another visit with Nurse Clarissa on March 21, 2023. At that time, he expressed complaints about left foot pain related to restless leg syndrome, the abrasion on his head, and an eyeglass prescription. An x-ray of his foot was obtained, and no acute abnormality was observed. *Id.* at 7.

Plaintiff did not make any further medical requests before his departure on March 24, 2023. *Id.*

As for Plaintiff's allegation of excessive force during a pat down on September 26, 2023, the Report finds that there was a facility-wide search for contraband on that date. *Id*. at 9. Sgt. Cummings denies using excessive force when patting Plaintiff down. He remembers that when he reached Plaintiff's inner thigh area, Plaintiff jumped, said "don't touch my penis," and laughed. Cummings asked, "Are you good?" and Plaintiff said, "Yea, I'm good." *Id*. Sgt. Harbin witnessed the search, and his recollection corresponds with that of Cummings. He was under the impression that Plaintiff was joking when he made the comment to Cummings. *Id*.

The Report also disagrees with Plaintiff's account of the October 22, 2023, incident. According to officers' contemporaneous accounts, two inmates reported that Plaintiff was threatening to kill other inmates while they slept and threatening to send his friends to kill other inmates' families. *Id*. at 11. Sgt. Harbin pulled Plaintiff out of the gym to question him. When Harbin told Plaintiff he was going to be moved, Plaintiff became agitated and uncooperative. Harbin grabbed Plaintiff's left arm and attempted to place him in the escort position. Plaintiff turned, tensed up, and jerked his hand away. Harbin ordered him to cuff up. Plaintiff did not comply. Harbin pushed him against the wall and then took him to the ground. Harbin denies choking Plaintiff. Plaintiff continued to resist while on the ground but was eventually cuffed and taken to disciplinary detention. *Id*.

Surveillance video (Doc. 30) shows Harbin speaking with Plaintiff. There is no sound, but Plaintiff appears agitated, gesturing with his hands. The video confirms that Plaintiff jerked his arm away from Harbin as Harbin placed his hand on Plaintiff's upper arm to turn him and escort him away. Harbin responded by pushing Plaintiff against the wall, then quickly taking him face down to the ground and getting on top of him. Two other staff members are present. Harbin and Plaintiff remain on the floor for about 45 seconds. A second camera shows Plaintiff walk past

about three minutes later, hands cuffed behind his back, accompanied by three staff members. Photographs taken of Plaintiff after the use of force incident do not show the "goose egg sized swelling on his forehead" that Plaintiff claims he suffered.

As for the alleged failure to provide dental care, the Report again found discrepancies with Plaintiff's account. According to the Report, HCDC has one sick call request submitted by Plaintiff in September 2023 pertaining to dental issues. (Doc. 19, at 13.) In that request, Plaintiff listed at least eight medical issues, one of which was discomfort due to cavities. Plaintiff was seen by medical staff two days later. Nurse Clarissa observed poor dental condition but no pus pockets or swelling. HCDC does not have a record of Plaintiff complaining about dental pain again until January 20, 2024. *Id*.

The Report asserts that each time Plaintiff complained of dental pain, he was seen by medical staff. *Id.* He was prescribed nonsteroidal anti-inflammatory drugs. When Nurse Clarissa first observed signs of possible infection on February 1, 2024, her findings were reviewed by Lou Miller, APRN, and orders were placed for an antibiotic. On February 6, 2024, orders were placed for Dentek OTC Temporary Repair for fillings, and a dental appointment was scheduled. On February 14, 2024, Plaintiff was transported to Health Ministries Dental Office, and the painful tooth was extracted. *Id*. at 14. He complained of pain again on February 19, 2024, and was seen by medical staff the same day. An order was entered for Plaintiff to receive Epson Salt Swish and Spit twice daily for three days. *Id*.

### III. Plaintiff's Response to the *Martinez* Report

In his Response (Doc. 31), Plaintiff points out that the Report did not provide video of the alleged March 19, 2023 incident. The Report addresses this, stating that "HCDC also searched for

7

potential surveillance video for Lazos' pod on March 19 or March 20, 2023, but the system did not go back far enough." (Doc. 19, at 8.)

Aside from the question of video footage, Plaintiff states in his Response that he "has no other objections as to the remainder of the Report." (Doc. 31, at 2.)

## IV. Discussion

The Court finds that Plaintiff's Complaint is subject to dismissal for the following reasons.

### A. No Proper Defendant Named

The Complaint names only the Board of Commissioners for Harvey County and Harvey County Sheriff Chad Gay as defendants.

To impose § 1983 liability on the county and its officials for acts taken by its employee, Plaintiff must show that the employee committed a constitutional violation and that a county policy or custom was "the moving force" behind the constitutional violation. *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998) (citing *see Monell v. Department of Social Services*, 436 U.S. 658, 695 (1978)). The Supreme Court explained that in *Monell* they decided "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue," and "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385–86 (1989). Plaintiff has pointed to no policy or deficiency in the training program used by the Sheriff or Harvey County and no causal link between any such inadequacy and the allegedly unconstitutional acts or inactions of any county employee. Therefore, the Harvey County Commissioners are subject to dismissal from this action.

In addition, an essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky*

*v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

An official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008); *Gagan v. Norton*, 35 F.3d 1473, 1476 n.4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995). To be held liable under § 1983, a supervisor must have personally participated in the complained-of constitutional deprivation. *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

The allegation that an official denied a grievance or failed to respond to a grievance is not sufficient to show personal participation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (A "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *see Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012).

Because Plaintiff fails to allege the personal participation of Sheriff Gay in any of the alleged constitutional violations, the Sheriff is subject to dismissal.

### B.  No Deliberate Indifference to Serious Medical Need

Plaintiff alleges that he did not receive adequate medical care for a head injury or adequate dental care while at HCDC.

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment.  "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component.  *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted).  In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted).  A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

 "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety."  *Id.* (quoting *Sealock*, 218 F.3d at 1209).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

Delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm.  *Olson v. Stotts*, 9 F.3d 1475 (10th Cir.

1993). In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

Plaintiff must also satisfy the subjective prong. The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). An apparent disagreement over course of treatment, however, does not rise to the level of a constitutional violation. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010). "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

The Tenth Circuit recently clarified that "it is possible to have some medical care and still state a claim under the gatekeeper theory." *Id.* at 1139. "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." *Id.* (citations omitted). Under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Id.* "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id.* (citations omitted).

Plaintiff's allegations show that he received medical care that was more than the functional equivalent of a compete denial of care. The Report supports this conclusion regarding Plaintiff's medical care at HCDC. Plaintiff fails to state a claim related to the alleged head injury because he has not shown that it was a serious medical need or that the HCDC staff were deliberately indifferent. The injury was not so obvious that even a lay person would easily recognize the necessity for a doctor's attention, based on the descriptions of the injury provided by witnesses. *See Ramos*, 639 F.2d at 575. There is no corroboration of Plaintiff's claim of significant blood loss or loss of consciousness. Given that the injury presented as an abrasion with a small amount of dried blood, Plaintiff has not shown that any HCDC staff member knew of and disregarded an excessive risk to Plaintiff's health or safety.

As for dental care, the staff of HCDC also do not appear to have acted with deliberate indifference. The documentation provided with the Report shows that Plaintiff's complaints of dental pain were not ignored. While undoubtedly Plaintiff did not see a dentist as quickly as he wanted, he did receive pain medication in the interim. The delay between when he complained on

12

January 20 and when he saw a dentist on February 14 is not ideal, but the Court is not convinced that Plaintiff suffered substantial harm as a result of the delay as required for a constitutional violation. *See Garrett*, 254 F.3d at 950. Plaintiff's claims suggest negligence, at most, which is insufficient to state a constitutional violation. The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle*, 429 U.S. at 105–06).

For these reasons, the Court finds that Plaintiff's claims of constitutionally inadequate medical care are subject to dismissal.

**C. Failure to State an Excessive Force Claim**

Plaintiff alleges HCDC staff used excessive force against him during a pat down and during an incident on October 22, 2023.

Courts generally analyze a prisoner's claim of excessive force under the Eighth Amendment's cruel and unusual punishment clause. *Cf. Whitley v. Albers*, 475 U.S. 312, 320-321 (1986); *Sampley v. Ruettgers*, 704 F.2d 491, 494-496 (10th Cir. 1983).[1] Not every isolated battery or injury to an inmate amounts to a federal constitutional violation. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (Not "every malevolent touch by a prison guard gives rise to a federal cause of

---

[1] In *Sampley*, the Tenth Circuit instructed:

A prison guard's use of force against an inmate is "cruel and unusual" only if it involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). We think that this standard imposes three requirements for an inmate to state a cause of action under the eighth amendment and section 1983 for an attack by a prison guard. First, "wanton" requires that the guard have intended to harm the inmate. Second, "unnecessary" requires the force used to have been more than appeared reasonably necessary at the time of the use of force to maintain or restore discipline. Third, "pain" means more than momentary discomfort; the attack must have resulted in either severe pain or a lasting injury.

*Id.*

action."); *Smith v. Iron County*, 692 F.2d 685 (10th Cir. 1982) (A prison guard's use of force against a prisoner is not always a constitutional violation.); *El'Amin v. Pearce*, 750 F.2d 829, 831 (10th Cir. 1984) (While an assault by a jailer on his prisoner can give rise to an action under section 1983, a jailer's use of force against a prisoner is not always a constitutional violation.); *see also George v. Evans*, 633 F.2d 413, 416 (5th Cir. 1980) ("A single unauthorized assault by a guard does not constitute cruel and unusual punishment."); s*ee DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) (holding that prison guard's "simple act of shoving" inmate into a door frame was not an Eighth Amendment violation.); *Suits v. Lynch*, 437 F. Supp. 38, 40 (D. Kan. 1977). As the United States Supreme Court has explained:

> Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles.

*Baker v. McCollan*, 443 U.S. 137, 146 (1979).

"[A]n excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Giron v. Corr. Corp. of America*, 191 F.3d 1281, 1289 (10th Cir. 1999). "An official has a culpable state of mind if he uses force 'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort to maintain or restore discipline.'" *Redmond v. Crowther*, 882 F.3d 927, 936–37 (10th Cir. 2018) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

Neither incident here appears to be a constitutional violation. The pat down incident fails to meet either the objective or the subjective prong of the test for excessive force. Plaintiff stated in the Complaint that "Deputy Cummings pat searched Plaintiff using excessive force while

searching the inner thy [sic], making contact with Plaintiff's testicles causing severe pain." (Doc. 1, at 13.)  The pat-down occurred during the course of a shake down search of the work release pod.  *Id.*  Based on Plaintiff's description, there is no indication that Cummings' use of force was more than de minimis or that he acted maliciously or sadistically, intending to harm Plaintiff.  *See Rhoten v. Werholtz*, 243 F. App'x 364, 367 (10th Cir. 2007) (finding allegation that guard slammed prisoner against wall and pulled on his testicles causing a great deal of pain during pat-down search constituted de minimis use of force that did not state an Eighth Amendment violation).

The second incident appears to have been a result of an attempt by HCDC staff to maintain or restore discipline.  Plaintiff's account of complete compliance with the directive to cuff up is at odds with the video, and his description of the injury he suffered is not supported by the photos.  The "reasonableness" of a particular use of force must be judged from the perspective of the officer at the time and not every push or shove, even though it may later seem unnecessary, violates the Constitution.  *Graham v. Connor,* 490 U.S. 386, 397 (1989).  It appears that Harbin perceived a need for force to maintain discipline and control after Plaintiff became agitated and jerked away from him, and he made a judgment about the amount of force required to bring the situation under control.  Plaintiff has not plausibly alleged that HCDC staff acted maliciously or sadistically for the purpose of harming him.  Therefore, he fails to state a claim for cruel and unusual punishment under the Eighth Amendment.

### D.  No Constitutional Right to Grievance Procedure

Insofar as Plaintiff contends that HCDC officials did not comply with the jail's grievance procedures by failing to respond to his appeals, he fails to allege the violation of a federal constitutional right.  *Sims v. Miller*, 5 F. App'x 825, 828 (10th Cir. 2001)); *see also Walker v. Mich. Dept. of Corrections*, 128 F. App'x 441, 445 (6th Cir.2005) (unpublished) (collecting cases).

### E. Failure to State a Conspiracy Claim

A conspiracy claim under § 1983 requires the allegation of "specific facts showing an agreement and concerted action among the defendants." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). In addition, a plaintiff must allege facts showing an actual deprivation of a constitutional right. *See Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995) (in order to prevail on a section 1983 conspiracy claim, plaintiff "must prove both the existence of a conspiracy and the deprivation of a constitutional right").

Plaintiff fails to allege any facts demonstrating that there was an agreement among HCDC staff members to violate his constitutional rights.

### F. Failure to State a Retaliation Claim

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his 'constitutional rights.'" *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990); *Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996). However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990) (plaintiffs must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."). To prevail, a prisoner must show that the challenged actions would not have occurred "but for" a retaliatory motive. *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir.2001) (citing *Maschner*, 899 F.2d at 949–50; *Peterson*, 149 F.3d at 1144)); *see also*

*Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation.").

Here, Plaintiff does not allege specific facts showing that he suffered retaliation because he exercised his constitutional rights. Rather, he makes the conclusory claim that the HCDC staff treated him poorly because he is Hispanic.

### G. Failure to State an Equal Protection/Racial Discrimination Claim

Religious and/or racial discrimination claims are cognizable under the equal protection clause of the Fourteenth Amendment. An equal protection violation occurs when the government treats someone differently than another person who is similarly situated. *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996). To state a claim, Plaintiff must show that Defendants treated him less favorably than other inmates solely because of his race or religion. *See Morman v. Campbell County Memorial Hosp.*, 623 F. App'x 927, 934 (10th Cir. 2015) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). Plaintiff has the burden of showing "the existence of purposeful discrimination," *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987), and that the purposeful discrimination "had a discriminatory effect" on him. *Id.*

Plaintiff's only allegations of racial discrimination are completely conclusory. He claims that all of the complained of conduct occurred because he is Hispanic, while the HCDC staff members that he mentions in the Complaint are Caucasian. This allegation, without any specific factual support, does not state a plausible claim for the constitutional deprivation of his equal protection rights.

### V. Conclusion

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The

report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). Thus, at this point in the proceedings the Court does not use the Report to resolve conflicts of fact. *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes."). In light of the Report, the Court is considering dismissal of this matter for failure to state a claim.

Plaintiff will be given an opportunity to show good cause why dismissal should not be entered. Failure to respond by the Court's deadline may result in dismissal of this action without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **July 15, 2024,** in which to show good cause, in writing, to the Honorable John W. Lungstrum, United States District Judge, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

Dated June 18, 2024, in Kansas City, Kansas.

> S/ James P. O'Hara
> JAMES P. O'HARA
> UNITED STATES MAGISTRATE JUDGE